MHW

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DAVID BEGLER, ) | |
| ) | |
| Appellant, ) | Case No. 07 C 4757 |
| ) | |
| v. ) | Honorable John W. Darrah |
| ) | |
| ANDREW J. MAXWELL, Trustee for the ) | |
| Chapter 7 Estate of marchFirst, Inc., et al., ) | |
| ) | |
| Appellee. ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on the appeal of the judgment of the bankruptcy court on July 19, 2007, by David Begler. For the reasons that follow, the decision of the bankruptcy court is affirmed in part, reversed in part, and remanded for further proceedings consistent with this Memorandum Opinion and Order.

## BACKGROUND

On April 12, 2001, marchFirst, Inc. and its subsidiaries and affiliates (collectively, "the Debtor") voluntarily filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the District of Delaware. On April 26, 2001, the Debtor converted its case to Chapter 7 of the Bankruptcy Code. On July 10, 2001, the Delaware Court transferred the bankruptcy proceeding to the United States Bankruptcy Court for the Northern District of Illinois. On July 16, 2001, Andrew J. Maxwell ("the Trustee") was appointed interim Chapter 7 trustee and, thereafter, became the permanent trustee.

On February 3, 2003, the Trustee filed an Adversary Complaint to Avoid Preferential Transfer against David Begler. The Trustee sought $36,300, plus interest, from Begler for funds Begler received from the Debtor while the Debtor was insolvent (funds Begler received within ninety days of the Debtor's bankruptcy petition). On October 15, 2003, the Trustee served discovery requests upon Begler. Begler responded to the discovery requests on November 18, 2003, but did not include any documents with the response. In March 2006, in his response to Maxwell's interrogatories, Begler stated, "[t]o the best of Defendant Begler's recollection, all debts owing him have been paid."

On April 10, 2006, the Trustee responded to Begler's discovery requests, including the following documents: (1) copies of the front and back of each of the Debtor's checks and corresponding bank statements; (2) a copy of the empirical study issued by the Risk Management Association for the 2001-2002 period, indicating the customary payment delay period in Begler's industry; (3) available copies of Begler's check stubs; and (4) printouts from the Debtor's electronic records purporting to set forth various transactions between Begler and the Debtor. The Trustee also informed Begler that he had custody of approximately four thousand boxes of documents and records, as well as electronic records, from the Debtor that do or may contain information that were available for review.

On November 9, 2006, Begler served a Rule 37 letter upon the Trustee, demanding the following documents: (1) invoices from marchFirst to third parties that refer, reflect or relate to work completed by Begler and billed by marchFirst to these third parties; (2) documents that refer, reflect or relate to the dates of the checks paid to Begler by marchFirst and posted to marchFirst's account for work completed; (3) any correspondence between marchFirst and Begler, including any

communications that indicate the payment terms agreed to between Begler and marchFirst; (4) any correspondence between marchFirst and any third-party or vendor that refer, reflect or relate to Begler, including any communications relating to Begler's work and any outstanding payments due Begler; (5) payment records and ledgers maintained by marchFirst that refer, reflect or relate to payments received from third parties corresponding to Begler's work as payments made to Begler; and (6) any documents by which marchFirst's ordinary payment period for vendors, such as Begler, could be determined. The Trustee responded to Begler's letter on November 16, 2006, referring Begler to documents previously produced and orders and memoranda opinions previously entered by the court in which the ordinary-course-of-business defense was raised.

On November 16, 2006, the parties filed their Rule 26(f) discovery report, setting forth dates, including disclosures between the parties, discovery cut-off, exchange of witness and exhibit lists, motions *in limine* and trial. On December 9, 2006, the Trustee provided Begler Rule 26(a)(1) disclosures, which included several names of persons whom the Trustee believed had knowledge of certain aspects of the Debtor's business. Begler did not depose any of the named individuals.

On February 7, 2007, Begler filed a motion to compel discovery, seeking the production of documents pertaining to payments by marchFirst to Begler, all documents used by the Trustee to determine the ordinary course of business for payments to vendors like Begler, and to compel the production of persons for depositions to help determine the ordinary course of payment by marchFirst to vendors such as Begler. The Trustee filed an opposition to the motion, asserting that he had already identified or provided the relevant documents. Begler's motion was heard on February 15, 2007 and continued to February 22, 2007, with the direction that the Trustee provide a copy of an index of the boxes that the Trustee had compiled. The Trustee provided the index to

Begler on February 19, 2007. On February 22, 2007, the bankruptcy court continued Begler's motion to February 27, 2007, to provide Begler additional time to review the index. Begler did not request to review any of the boxes on the index and did not make any further inquiry to the Trustee. On February 27, 2007, the bankruptcy court denied Begler's motion to compel.

On March 5 and 6, 2007, the parties exchanged their proposed witness and exhibit lists. Begler's witness list called upon the Trustee to produce at trial the marchFirst representative most knowledgeable with respect to payments made to Begler, payments made to others in Begler's industry, and the ordinary course of payment in Begler's industry. On March 14, 2007, the parties filed their objections to the witness lists and proposed exhibit lists and motions *in limine*. Begler's motions included: (1) Motion *in Limine* to Bar Introduction of Evidence Contrary to this Court's Earlier Findings in *Maxwell v. Grover*, (2) Motion *in Limine* to Bar Debtor's Proposed Exhibit 14, (3) Motion *in Limine* to Bar Use of Clear Dates to Determine Ordinary Course, (4) Motion Barring Certain Testimony by Karen Singer at Trial, and (5) Motion *in Limine* Barring Debtor from Calling Brady Nitchman as a Witness at Trial. The Trustee filed a Motion to Strike Defendant's Proposed Exhibits 4 and 15-30 and Strike Mr. Begler's Witness Designation Seeking Testimony from a Knowledgeable marchFirst Representative.

## BANKRUPTCY COURT RULING

A bench trial was held on March 19, 2007. On July 20, 2007, the bankruptcy court issued its Findings of Fact and Conclusions of Law, granting judgment in the Trustee's favor.

Prior to testimony at trial, the bankruptcy court denied Begler's Motion *in Limine* to Bar Use of Clear Dates to Determine Ordinary Course and Motion *in Limine* Barring Debtor from Calling Brady Nitchman as a Witness at Trial. The bankruptcy court struck Begler's exhibits 15 through 30.

Exhibits 16 through 26 included the briefs, supporting affidavits, and opinions in *Maxwell v. Grover* and a printout of Grover's website. Begler argued that the exhibits were not hearsay because they were not being offered for the truth of the matter asserted but as evidence that Begler was in the same industry as decided in *Maxwell v. Grover*.

The bankruptcy court further held that Begler's Exhibits 27 through 30 would be admissible if he provided proper foundation at trial. Exhibits 27 through 30 included invoices and pay-stubs from marchFirst to Eric Spillman and Art Industria. The bankruptcy court struck Begler's witness designation seeking testimony from a knowledgeable marchFirst representative, agreeing with the Trustee's argument that there was no rule requiring the Trustee to produce such a person and that the Trustee had already disclosed individuals that he knew of and that Begler failed to depose any of those individuals.

The bankruptcy court found that Begler was engaged in the copywriting industry business and performed concept development and copywriting services for the Debtor prior to the petition date. During the ninety days preceding the petition date, the Debtor made three payments to Begler as follows: (1) by check dated February 2, 2001 (clearing February 8, 2001) in the amount of $20,300; (2) by check dated February 15, 2001 (clearing February 26, 2001) in the amount of $8,000; and (3) by check dated March 9, 2001 (clearing March 19, 2001) in the amount of $8,000. The first payment was made in satisfaction of invoices dated November 5, 2000 and December 4, 2000. The second payment was made in satisfaction of an invoice dated January 2, 2001; and the third payment was made in satisfaction of an invoice dated February 1, 2001. The Debtor paid these invoices between 36 and 87 days after the invoice date and, on average, 56.5 days after the invoice date. For approximately six months prior to the preference period, the Debtor paid invoices issued by Begler

between 24 and 51 days after the invoice date and, on average, 32.14 days after the invoice date. A final invoice, in the amount of $11,700, issued by Begler to marchFirst, dated March 2001, was not paid by the Debtor.

The work that Begler was performing for the Debtor was for Apple Computer, a client of the Debtor. Some time around the petition date, Begler and Apple Computer came to an agreement in which Begler would work directly for Apple. As part of that negotiation, Apple agreed to pay Begler $11,700. As a result, Begler did not file a claim for the invoice in the Debtor's bankruptcy case.

The parties stipulated that Maxwell proved his *prima facie* case that Begler received preferential transfers from the Debtor. Thus, the issues in the case were Begler's affirmative defenses of ordinary course of business and subsequent new value.

As to Begler's ordinary-course-of-business defense, the bankruptcy court held that Begler failed to prove that the transfers were made in the ordinary course of business between the parties because the payments made to Begler during the preference period were late. The bankruptcy court rejected Begler's argument that the payments were late because the invoices had to be routed through Chicago after marchFirst merged with USWeb/CKS because, while Begler testified that prior to the merger the invoice was processed by the San Francisco office and after the merger the invoice was sent to the Chicago office for processing after it was submitted to the San Francisco office, there was no testimony regarding the process from anyone involved in the process. Furthermore, the evidence demonstrated that payments made shortly after the merger were timely. Therefore, "Begler's inconclusive evidence that the merger affected the timeliness of the Debtor's payment is insufficient to offset the Trustee's evidence that the payments made during the preference period were paid later than was the ordinary course of business of the parties."

The bankruptcy court further held that Begler failed to prove that the transfers were made in the ordinary course of business in Begler's industry. The bankruptcy court reiterated that the affidavits, summary judgment briefs, and the court's opinion in the *Grover* case were not admissible because the affidavits were hearsay and the court documents were not relevant as fact evidence.

The bankruptcy court further rejected Begler's argument that *Grover* was binding under the doctrine of collateral estoppel because Begler failed to prove that the issue of what constituted a late payment in *Grover's* industry was the same as in Begler's case. The bankruptcy court found that "Begler's self-serving testimony was the only proof offered to show that he was in the same industry as Ms. Grover"; thus, Begler failed to show that he was in the same industry as Grover.

Lastly, the bankruptcy court held that Begler failed to prove his new-value defense because he never established for certainty that the March 2001 invoice was unpaid on the petition date and because he failed to put in any evidence on the question of how the Debtor's estate was affected by Apple's payment to Begler; thus, he failed to meet his burden of proving that there was no effect on the Debtor's estate.

Begler appeals the bankruptcy court's ruling, arguing that the bankruptcy court erred: (1) in finding he did not sufficiently establish his new-value defense; (2) in refusing to allow into evidence his trial exhibits nos. 15, 16, 17, 25 and 27-30; (3) in finding that none of the payments he received during the preference period were within the ordinary course of business; (4) in denying his Motion *in Limine* for Collateral Estoppel to Bar Introduction of Evidence or Testimony Contrary to this Court's Earlier Findings in *Maxwell v. Grover*; (5) in denying his February 7, 2007 motion to compel; (6) in refusing to require the Trustee to produce a person most knowledgeable of payments

to him, the damages claimed, the payment arrangement for payments by marchFirst for work he completed and his/her understanding of the ordinary course of business for payments by marchFirst to vendors such as Begler; and (7) in awarding pre-judgment interest on the amount awarded.

## DISCUSSION

A bankruptcy court's conclusions of law are reviewed *de novo*. *See Meyer v. Rigolon*, 30 F.3d 1375, 1378 (7th Cir. 1994). The Court reviews the bankruptcy court's factual findings for clear error. *See Hoseman v. Weinschneider*, 322 F.3d 468, 473 (7th Cir. 2003). A finding of fact is clearly erroneous if, after reviewing the evidence, "the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985).

Pursuant to Federal Rule of Bankruptcy Court 8013, a bankruptcy court's findings of fact, "whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Rule 8013 "does not permit a trier of fact to be overturned 'simply because [the appellate court] is convinced it would have decided the case differently.'" *In re Weber*, 892 F.2d 534, 538 (7th Cir. 1989) (*Weber*). Instead, where two permissible conclusions may be drawn, the factfinder's choice cannot be clearly erroneous. *Weber*, 892 F.2d at 538. "Special deference must be accorded to credibility determinations 'for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said.'" *Weber*, 892 F.2d at 538.

## New-Value Defense

Begler first argues that the bankruptcy court erred in finding that he did not sufficiently establish his new-value defense.

A trustee may avoid certain payments to creditors made during the ninety-day period prior to bankruptcy. *See* 11 U.S.C. § 547(b); *Kleven v. Household Bank F.S.B.*, 334 F.3d 638, 641 (7th Cir. 2003 (*Kleven*). These payments are deemed "preferential" and avoidable "because they allow the favored creditor to receive more than if it had to wait in line with other creditors and share with them what is usually rather slim pickings from the debtor's estate." *Kleven*, 334 F.3d at 641.

However, Section 547 includes certain exceptions that protect some transfers that are made during the preferential time period. *See* 11 U.S.C. § 547(c). One of these exceptions is known as the new-value defense.

A trustee "may not avoid as a preferential transfer any transfer . . . on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor." 11 U.S.C. § 547(c)(4). The underlying theory of this "new value" defense is that "to the extent new value is offered, the preference is repaid to the estate." *See In re Prescott*, 805 F.2d 719, 727 (7th Cir. 1986) (*Prescott*). For the new-value defense to apply, the creditor "has the burden of establishing that new value was extended, which remains unsecured and unpaid after the preferential transfer." *Prescott*, 805 F.2d at 731; *In re GGSI Liquidation, Inc.*, 313 B.R. 770, 778 (Bank. N.D. Ill. 2004) (*GGSI*); *In re Schwinn Bicycle Co.*, 205 B.R. 557, 568 (Bank. N.D. Ill. 1997) (*Schwinn*).

Assuming the payment from Apple constituted payment for the March 2001 invoice, Begler contends that the bankruptcy court erred in finding that he did not establish with certainty that the March 1, 2001 invoice was unpaid on the petition date. The bankruptcy court cited to Begler's trial

testimony in which he testified that he was "paid" by Apple "probably somewhere in April" but that he could not recall if the payment was at the beginning, middle or end of the month (the bankruptcy petition was filed April 12). Begler further testified that he had a pay stub in California that would reflect the payment date, but he did not provide it during discovery and did not have it in court. Begler disputes the bankruptcy court's finding based on his testimony that he started working for Apple "when marchFirst went bankrupt" and that he received the payment from Apple as an incentive to begin working for Apple as undisputed evidence that he received payment after the petition date. However, that testimony does not provide any further clarification of when he received payment from Apple. Based on the testimony and evidence (or lack thereof), the bankruptcy court's finding on this issue was not clearly erroneous.

The bankruptcy court then addressed whether the payment from Apple constituted payment for the March 2001 invoice, finding that the invoice was not "unpaid" because of Apple's payment to Begler. In addressing this issue, the bankruptcy court adopted the Eighth Circuit's analysis as to whether an invoice remains unpaid when the invoice is paid by a third-party (noting that the Seventh Circuit has not addressed the issue). In *Kroh Brothers Dev. Co. v. Continental Const. Eng., Inc.*, 930 F.2d 648, 654 (8th Cir. 1991) (*Kroh*), the Eighth Circuit held that the availability of the new-value defense when a payment is received from a third-party "depends on the ultimate effect on the estate." Thus, if a third-party made a payment to a creditor and then the third-party filed a claim against the debtor and the debtor's estate was diminished, the defense is not available. *See Kroh*, 930 F.2d at 654; *GGSI*, 313 B.R. at 779.

In the instant case, the bankruptcy court found that Begler failed to prove that there was no effect on the Debtor's estate based on Begler's failing to ask the Trustee whether Apple had filed a

claim and/or the lack of any documents demonstrating whether or not Apple filed a claim. At trial, Begler testified that the payment from Apple was not made on the Debtor's behalf but was made as an incentive to have Begler accept a position with Apple. Begler further testified that he did not assign or transfer his interest in the invoice to Apple. Moreover, in his response to Begler's post-trial brief, the Trustee states that Apple did not file a timely claim against the Debtor. This statement constitutes a binding admission by the Trustee and has the effect of withdrawing the fact from contention. *See Soo Line R.R. Co. v. St. Louis Ry. Co.*, 125 F.3d 481, 483 (7th Cir. 1997); *Keller v. United States*, 58 F.3d 1194, 1199, n.8 (7th Cir. 1995).[1] Thus, the bankruptcy court erred in finding that Begler failed to prove there was no effect on the Debtor's estate when Apple paid Begler the amount of the March 1, 2001 invoice. This error was the basis of the bankruptcy court's ruling on the new-value defense; thus, the cause must be remanded on this issue.

In light of the bankruptcy court's finding that Begler could not rely on the new-value defense, the bankruptcy court did not have to reach the issue of whether the applicable new-value defense amounts could be "clawed back" into the estate as a preferential transfer. Therefore, this issue is also remanded back to the bankruptcy court.

### *Ordinary-Course-of-Business Defense*

Begler argues that the bankruptcy court made several errors as to his ordinary-course-of-business defense.

Another exception to the Section 547 preferential transfers is the "ordinary course of business" defense. *See* 11 U.S.C. § 547(c). This defense provides that a transfer is insulated from

---

[1] The Trustee's brief on appeal does not dispute the admission and fails to address Begler's argument based on the admission.

avoidance if that "transfer is (a) 'in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and transferee,' (b) 'made in the ordinary course of business or financial affairs of the debtor and transferee,' and (c) 'made according to ordinary business terms.'" *Kleven*, 334 F.3d at 641-42. The creditor has the burden of proving that the debtor's payment qualifies for this defense. *Kleven*, 334 F.3d at 642.

Evidentiary Rulings as to Begler's Exhibits

As to Begler's ordinary-course-of-business defense, Begler argues that the bankruptcy court erred when it refused to allow his proposed trial exhibit numbers 15-17, 25 and 27-30. These exhibits included: the Trustee's Motion for Partial Summary Judgment filed in *Grover* (Exhibit No. 15); Grover's Response to the Trustee's Motion for Partial Summary Judgment (Exhibit No. 16), which included affidavits from various vendors in the marketing and advertising industry (Exhibit Nos. 17-23); the Trustee's Reply in Further Support of its Motion for Partial Summary Judgment (Exhibit No. 24); the District Court's ruling upholding the bankruptcy court's ruling regarding the Trustee's Motion for Partial Summary Judgment (Exhibit No. 25); and invoices to marchFirst and check stubs from marchFirst to other vendors in the marketing and advertising industry, including Eric Spillman and Art Industria (Exhibit Nos. 53-56).

Begler sought the introduction into evidence of the Trustee's Motion for Partial Summary Judgment and its reply brief to the motion to introduce the Trustee's prior admissions that the ordinary terms of industry for payments in the marketing and advertising industry (Begler's alleged industry) was at least ninety-seven days from the date of invoice. Begler contends that each was admissible as public records and as admissions and prior inconsistent statements by the Trustee with respect to the ordinary terms for payment to vendors in the marketing and advertising industry. The

bankruptcy court disallowed the court documents, finding that they were not relevant as fact evidence. This finding was not in error because the court documents went to the issue of the ordinary course of business as to Grover's industry – the bankruptcy court found that Begler had not proved his business was included in the same industry as Grover.

Begler sought to introduce Grover's response brief, specifically the affidavits in support of Grover's response, to establish that Begler provided the same services offered by the affiants in the affidavits, thereby demonstrating that he worked in the same industry as Grover. The bankruptcy court denied admission of these affidavits as hearsay. The bankruptcy court did not err in denying admission of these documents as hearsay.

Begler sought to introduce the Spillman and Art Industria invoices and check stubs as marchFirst business records with respect to other vendors in Begler's industry that provided services to marchFirst as additional evidence of the ordinary terms of payment in Begler's marketing and advertising industry. The Spillman and Art Industria invoices and pay stubs were barred until the end of trial; at which point, Begler was given the opportunity to introduce the invoices and pay stubs if he provided sufficient foundation. At the end of the trial the invoices and pay stubs were not admitted because Begler failed to demonstrate that he was in the same business as Spillman and Art Industria. The record supports the bankruptcy court's finding in this regard.

Lastly, Begler sought to introduce the bankruptcy court's *Grover* order. As fully addressed by the bankruptcy court, the *Grover* order is not fact evidence but could be cited as supporting Begler's arguments. Thus, the bankruptcy court did not err in not allowing the order to be introduced as fact evidence.

Ordinary Course of Business Between marchFirst and Begler

The history of dealings between the creditor and debtor is "the strongest factor supporting a determination that the business between a debtor and an alleged preference creditor is ordinary." *Kleven*, 334 F.3d at 642. A non-exhaustive list of factors considered in this analysis include: (1) the length of time the parties were engaged in the transaction at issue, (2) whether the form or amount of tender differed from past experiences, (3) whether the creditor or debtor engaged in any unusual payment or collection activity, and (4) whether the creditor took advantage of the debtor's deteriorating financial condition. *See Kleven*, 334 F.3d at 642. Whether a party has established an ordinary-course-of-business defense is a mixed question of fact and law. *See In re National Steel Corp.*, 351 B.R. 906, 913 (N.D. Ill. 2006) (*National Steel*).

Begler argues that the bankruptcy court erred in finding that he did not prove that the preferential payments he received were within the ordinary course of business between he and marchFirst.

The bankruptcy court found that the payments Begler received during the preference period were not made in the ordinary course of business between the parties because the payments were made late in comparison to payments prior to the preference period. The payments were paid 57 days (November 6, 2000 invoice), 29 days (December 4, 2000 invoice), 14 days (January 2, 2001 invoice) and 6 days (February 1, 2001 invoice) after the due date based on a thirty-day due date – compared to other pre-preference period invoices that were paid anywhere between 6 days early and 21 days late. The bankruptcy court rejected Begler's argument that the payments were late because they had to be routed through two offices during the preference period (instead of just one office prior to the preference period) because there was "no testimony regarding the process from anyone

involved in the process." Furthermore, based on the Trustee's testimony, the merger became official on March 1, 2000, "well before the preference period so if there was going to be a delay in payments to creditors, one would think the delays would have started shortly thereafter rather than seven months later." In addition, Begler's own chart showed that three post-merger payments were made early. Thus, "Begler's inconclusive evidence that the merger affected the timeliness of the Debtor's payments is insufficient to offset the Trustee's evidence that the payments made during the preference period were paid later than was the ordinary course of business of the parties."

The bankruptcy court held that the payments made to Begler during the preference period were not in the ordinary course of business between the parties because, compared to the pre-preference period payments, they were paid late. The bankruptcy court further rejected Begler's explanations for the late payments. It is not clear whether the bankruptcy court considered the other above factor(s) in determining that the payments were not made in the ordinary course of business between the parties. The timeliness of the payments is but one factor that the bankruptcy court should consider, but it is not the sole determinative factor. *See Kleven*, 334 F.3d at 642; *National Steel*, 351 B.R. at 915 n. 11 ("Other factors besides a similarity between the aggregate average amount of time payments were received before and during the preference period is required in order to determine whether a transfer was made in the ordinary course of business. The test articulated in *Kleven* makes that clear."); *GGSI*, 313 B.R. at 775-76 (a "mechanical analysis" of payments is "unconvincing" when the parties did not have a consistent payment practice); *In re Midway Airlines*, 180 B.R. 1009, 1015 (Bank. N.D. Ill. 1995) (a statistical analysis of payments before and during the preference period "is not the sole ultimate determinative factor" in determining whether payments were received during the ordinary course of business between the parties). Thus, on remand, the

bankruptcy court should clarify its consideration of these other factors in determining whether the payments Begler received during the preference period were within the ordinary course of business between he and marchFirst.

Payments Made According to Ordinary Business Terms

Begler argues that the bankruptcy court erred in finding that he did not sufficiently prove that the payments made during the preferential period were made in the ordinary business terms of Begler's industry.

Whether payments were made according to ordinary business terms focuses on "industry standards and common practice." *See Barber v. Golden Seed Co.*, 129 F.3d 382, 390 (7th Cir. 1997). The creditor must show that the transaction was "ordinary in the industry examined as a whole." *See In re Midway Airlines, Inc.*, 69 F.3d 792, 797 (7th Cir. 1995). To meet this burden, the creditor does not have to establish "the existence of some single, uniform set of business terms" but must show that its dealings with the debtor were not "so idiosyncratic" as to fall beyond "the outer limits of normal industry practice." *In re Tolona Pizza Prods. Corp.*, 3 F.3d 1029, 1033 (7th Cir. 1993).

At trial, Begler testified that he was in the marketing and advertising industry in San Francisco, California. Begler also testified that he believed he performed the same work and was in the same industry as Grover. In addition, the Trustee's interrogatory response, in which the Trustee stated that the industry standard of payment in Begler's industry was between 1 and 52 day(s) after the invoice date, was admitted into evidence.

The bankruptcy court, when addressing this element, discussed at length the evidentiary rulings discussed above and concluded that Begler failed to prove that the transfers were made in the ordinary course of business in Begler's industry. The bankruptcy court discounted Begler's

-16-

testimony – that he was in the same industry as Grover – as "self-serving." However, the bankruptcy court did not address Begler's testimony as to what work he performed for marchFirst in relation to the Trustee's expert's testimony that 97 days may be the appropriate measure for Begler's industry and the Trustee's admission in the interrogatories that the industry standard of payment in Begler's industry was between 1 and 52 day(s) after the invoice date. The bankruptcy court's failure to address this other evidence in making its findings constitutes error.

## *De Minimis* Test

Begler next argues that the bankruptcy court erred by failing to apply a *de minimis* test. In light of the bankruptcy court's rulings addressed above, the bankruptcy court did not address whether the difference in the days that Begler received payments in comparison with the industry standard was *de minimis* and did not foreclose the ordinary-course-of-business defense. In light of this Court's above rulings, this issue must also be addressed on remand.

### *Begler's Motion in Limine Based on Collateral Estoppel*

Begler argues that the bankruptcy court erred in denying his Motion *in Limine* for Collateral Estoppel to Bar Introduction of Evidence or Testimony Contrary to This Court's Earlier Findings in *Grover* because, contrary to the bankruptcy court's ruling, he demonstrated that he was in the same industry as Grover.

The doctrine of collateral estoppel bars the relitigation of issues. An issue may not be relitigated if: (1) the issue to be precluded is the same issue that was involved in a prior action; (2) the issue was actually litigated; (3) the determination of the issue was essential to the final judgment; and (4) the party against whom preclusion is invoked was represented in the prior action. *See Adair v. Sherman*, 230 F.3d 890, 894 (7th Cir. 2000).

Here, the bankruptcy court held that collateral estoppel did not apply because Begler failed to demonstrate that he was in the same industry as Grover. The bankruptcy court noted that the only proof Begler offered to show that he was in the same industry as Grover was his "self-serving testimony," of which the bankruptcy court found insufficient to demonstrate that Begler was in the same industry as Grover. The bankruptcy court did not err in finding that Begler failed to demonstrate, with admissible evidence, that he was in the same industry as Grover and, therefore, did not err in finding that collateral estoppel did not apply.

*Begler's Motion To Compel and the Bankruptcy Court's Refusal to Require the Trustee to Produce at Trial Debtor's Person Most Knowledgeable of Payments*

Begler argues that the bankruptcy court erred when it denied his February 7, 2007 Motion to Compel and when it refused to require the Trustee to produce Debtor's person most knowledgeable of payments to testify at trial. The Trustee opposed the motion to compel, asserting that he had already identified or provided the relevant documents. Subsequently, the Trustee also provided Begler with a copy of an index of the boxes that the Trustee had compiled; and the bankruptcy court provided Begler additional time to review the index. Begler did not request to review any of the boxes on the index and did not make any further inquiries. The Trustee also opposed producing a person most knowledgeable of payments to testify at trial because there was no rule requiring he produce such a person; and he had already disclosed such individuals, and Begler failed to depose any of the previously disclosed individuals. Based on the Trustee's previous disclosures and additional disclosures, the lack of any rule requiring the Trustee produce such a person and Begler's failure to utilize the disclosures and/or depose any of the individuals that were already disclosed, Begler's motions were denied.

Based on the above, the bankruptcy court did not err in denying Begler's motion to compel or in refusing to require the Trustee to produce the Debtor's person most knowledgeable of payments to testify at trial.

*Awarding Pre-Judgment Interest*

Lastly, Begler argues that the bankruptcy court erred in awarding pre-judgment interest.

An award of pre-judgment interest in actions to recover preferential transfers is within the bankruptcy court's discretion. *See Schwinn*, 205 B.R. at 574. The purpose of awarding pre-judgment interest is to compensate the debtor's estate for its inability to use the recovered money during the time it was in the creditor's possession. *See Schwinn*, 205 B.R. at 574.

The bankruptcy court awarded the Trustee pre-judgment interest in the amount of $10,807.36. Begler argues that the bankruptcy court abused its discretion in awarding this amount, which is almost one-third of the judgment awarded to the Trustee. However, Begler was in possession of the money for several years, and the delays in a final resolution were due to both parties. Accordingly, the bankruptcy court did not abuse its discretion in awarding pre-judgment interest. However, the amount of pre-judgment interest may have to be re-calculated, following remand.

## CONCLUSION

Based on the foregoing, the July 19, 2007 judgment of the bankruptcy court is affirmed in part, reversed in part, and remanded for further proceedings consistent with this Memorandum Opinion and Order.

Dated: February 5, 2008

JOHN W. DARRAH
United States District Court Judge